**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| ASHLEY O'DONLEY, JORDAN ST. PHILIP, TINA VIOSCA, ALEXIS MANER, CASIE CHRISTOPHER, and DARLA JOHNSON, individually and on behalf of all similarly situated persons,<br><br>    Plaintiffs,<br><br>v.<br><br>LAMNC LLC d/b/a CRUNCH MANDEVILLE and FIT FUSION, LLC,<br><br>    Defendants. | Civil Action No.<br><br>PROPOSED CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Ashley O'Donley, Jordan St. Philip, Tina Viosca, Alexis Maner, Casie Christopher, and Darla Johnson, individually and on behalf of all others similarly situated, upon personal knowledge of the facts pertaining to themselves and on information and belief as to all other matters, by and through counsel, hereby bring this Class Action Complaint against Defendants, LAMNC LLC doing business as Crunch Mandeville and FIT FUSION LLC, (collectively, "Crunch" or "Defendants").

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

1.      At all times material hereto, LAMNC LLC owned, operated, managed, and maintained the facility known as Crunch Mandeville.

1

2.      At all times material hereto, FIT FUSION LLC owned, operated, and/or otherwise managed LAMNC LLC d/b/a Crunch Mandeville.[1]

3.      At all times material hereto the policies and procedures of Crunch Mandeville were directed by FIT FUSION LLC through LAMNC LLC

4.      At all times material hereto, LAMNC LLC employed and controlled Nathan Volz as an employee at Crunch Mandeville.

5.      At all times material hereto, Nathan Volz was acting in the course and scope of his employment.

6.      At all times material hereto, Nathan Volz was acting in the course and scope of his employment under the policies and procedures of Crunch Mandeville.

7.      At all times material hereto, Volz was assigned to duties including assisting in the tanning facilities at Crunch Mandeville.

8.      At all times material hereto, Volz had access to the tanning facilities at Crunch Mandeville in the course and scope of his employment duties at Crunch Mandeville.

9.      At all times material hereto, when Volz assisted customers using the tanning facilities at Crunch Mandeville, including Ashley O'Donley, Jordan St. Philip, Tina Viosca, Alexis Maner, Casie Christopher, and Darla Johnson, it was in the course and scope of his employment duties under the policies and procedures of Crunch Mandeville.

10.     At all times material hereto, Plaintiffs had an expectation of privacy during their tanning sessions and other use of the facilities at Crunch Mandeville.

11.     On July 16, 2026, news outlets reported that Volz had been arrested for photographing women inside tanning booths at the facility without their consent. The news reports

---

[1] https://valdostadailytimes.com/2024/08/07/crunch-franchise-brings-state-of-the-art-fitness-facility-to-mandeville-la/ (last visited July 31, 2026).

2

indicated that Volz had arrested Volz approximately two weeks earlier, on or around June 30.

12.     Thus, Volz committed sexual offense through video voyeurism to members who used the tanning facilities at Crunch Mandeville.

13.     Police authorities have reported that Volz's victims include at least 10 women, but the numbers could be in the "dozens". The investigation is still ongoing and the extent of Volz's sexual offenses are unknown—but worse, may remain unknown despite best efforts at investigating his actions. Authorities have said that suspicious videos on Volz's phone date back to at least March of 2026.

14.      Plaintiffs reasonably believe that these inappropriate images and videos may never be completely discovered

15.     Volz's video voyeurism should not have happened because it was preventable.

16.     Crunch knows it has duties to safeguard its customers' privacy and to provide secure and safe facilities.

17.     Crunch's members relied on Crunch to fulfill its duties when they sought membership in order to use the facilities at Crunch Mandeville, and they would not have agreed to become members if Crunch had not promised to protect their privacy.

18.     Even so, Crunch never implemented the security safeguards that it was obligated to use to protect its members.

19.     Indeed, on information and belief, Crunch failed to implement a policy preventing employees from accessing their personal devices during the work shift.

20.     On information and belief, Crunch failed to adequately train its employees on reasonable protocols or implement reasonable measures, to protect the privacy of members when they use the facilities of Crunch Mandeville, including the tanning facilities.

21. On information and belief, Crunch failed to adequately supervise its employees at Crunch Mandeville.

22. Crunch's misconduct violates state and federal law and industry standard regarding privacy.

23. Upon learning of Volz's acts of sexual offenses through video voyeurism, Crunch had a duty to inform all members who used Crunch facilities during Volz's tenure.

24. Crunch breached its duty of reasonable care to its members by failing to notify all members who used Crunch facilities during Volz's tenure.

25. Plaintiffs learned of Volz's video voyeurism at Crunch Mandeville from news and social media reports, not from Crunch.

26. Crunch's motive for failing to notify its members affected by Volz's acts was financial in nature.

27. Volz's intentional acts described herein as occurring on the premises and in the facility of Crunch Mandeville are sexual offenses and harassment that Volz committed on members using Crunch Mandeville facilities, including the tanning facilities.

28. 9 U.S.C. §402(a) provides, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual offenses dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual offenses dispute or the sexual harassment dispute.

**THE PARTIES**

4

29.     Plaintiff Ashley O'Donley is a natural person and a resident and citizen of Louisiana.

30.     Plaintiff Jordan St. Philip is a natural person and a resident and citizen of Louisiana.

31.     Plaintiff Tina Viosca is a natural person and a resident and citizen of Louisiana.

32.     Plaintiff Alexis Maner is a natural person and a resident and citizen of Louisiana.

33.     Plaintiff Casie Christopher is a natural person and a resident and citizen of Louisiana.

34.     Plaintiff Darla Johnson is a natural person and a resident and citizen of Louisiana.

35.     Defendant, FIT FUSION LLC is an Indiana limited liability with its principal place of business at 14350 Mundy Drive, Suite 800 #288, Noblesville, IN, 46060.

36.     Defendant LAMNC LLC is a Louisiana limited liability company with its domicile listed as 3867 PLAZA TOWER DR BATON ROUGE, LA and its mailing address 8888 KEYSTONE CROSSING BLVD. SUITE 800 INDIANAPOLIS, IN 46240.

37.     All of Plaintiffs' claims stated herein are asserted against FIT FUSION LLC and any of its owners, partners, predecessors, successors, subsidiaries, agents and/or assigns.

## JURISDICTION AND VENUE

38.     Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member is a citizen of a state different from Defendant.

39.     LAMNC LLC is a Louisiana limited liability company.

40.     LAMNC LLC's member manager is an Indiana resident.

41.	FIT FUSION LLC is an Indiana limited liability company.

42.	Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

43.	Defendants operate Crunch Mandeville in Louisiana, routinely conduct business in Louisiana, have sufficient minimum contacts in Louisiana, and have intentionally availed themselves of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services within Louisiana.

44.	Venue is proper in this Court under 28 U.S.C. § 1391 because Defendant does business in this Judicial District.

## PLAINTIFFS' EXPERIENCES

45.	Plaintiff Ashley O'Donley has been an active member at Crunch Mandeville for approximately 18 months.

46.	Plaintiff Ashley O'Donley frequently uses the tanning services at Crunch Mandeville, as often as four times a week, particularly during the summer months.

47.	On or around July 15, 2026, Plaintiff Ashley O'Donley became aware of the sexual offenses committed by Volz on Facebook.

48.	Plaintiff Ashley O'Donley trusted that Crunch Mandeville would use reasonable measures to protect her privacy and to provide secure and safe facilities consistent with state and federal law.

49.	Although Plaintiff Ashley O'Donley took steps to learn from police authorities that images of her were not found on Volz's personal device, she remains concerned that Crunch did not take reasonable and adequate steps to protect her privacy and that Crunch does not have policies and procedures in place to prevent an incident such as Volz's video voyeurism from occurring in the future.

50. Plaintiff Jordan St. Philip has been an active member at Crunch Mandeville since approximately October 13, 2025.

51. Plaintiff Jordan St. Philip has used tanning services since she became a member. She used the tanning services at Crunch Mandeville frequently and regularly between approximately October 23, 2025, and July 2026.

52. Plaintiff Jordan St. Philip trusted that Crunch Mandeville would use reasonable measures to protect her privacy and to provide secure and safe facilities consistent with state and federal law.

53. Although Plaintiff Jordan St. Philip took steps to learn from police authorities that images of her were not found on Volz's personal device, she remains concerned that Crunch did not take reasonable and adequate steps to protect her privacy and that Crunch does not have policies and procedures in place to prevent an incident such as Volz's video voyeurism from occurring in the future.

54. Plaintiff Tina Viosca has been an active member at Crunch Mandeville since approximately February 23, 2026.

55. Plaintiff Tina Viosca has used tanning services since she became a member. She estimates that she has used the tanning services at Crunch Mandeville at least 6-8 times between approximately February 23, 2026, and July 8, 2026.

56. Plaintiff Tina Viosca trusted that Crunch Mandeville would use reasonable measures to protect her privacy and to provide secure and safe facilities consistent with state and federal law.

57. Although Plaintiff Tina Viosca took steps to learn from police authorities that images of her were not found on Volz's personal device, she remains concerned that Crunch did

not take reasonable and adequate steps to protect her privacy and that Crunch does not have policies and procedures in place to prevent an incident such as Volz's video voyeurism from occurring in the future.

58.     Plaintiff Alexis Maner has been an active member at Crunch Mandeville since approximately October 2024.

59.     Plaintiff Alexis Maner began using the tanning services at Crunch Mandeville as soon as she became a member. She estimates that she used the tanning services at Crunch Mandeville at least weekly, sometimes 3-4 per week.

60.     In approximately mid-July of 2026, Plaintiff Alexis Maner became aware of the incident from social media postings.

61.     Plaintiff Alexis Maner trusted that Crunch Mandeville would use reasonable measures to protect her privacy and to provide secure and safe facilities consistent with state and federal law.

62.     Although Plaintiff Alexis Maner took steps to learn from police authorities that images of her were not found on Volz's personal device, she remains concerned that Crunch did not take reasonable and adequate steps to protect her privacy and that Crunch does not have policies and procedures in place to prevent an incident such as Volz's video voyeurism from occurring in the future.

63.     Plaintiff Casie Christopher has been an active member at Crunch Mandeville since approximately December 31, 2024.

64.     Plaintiff Casie Christopher began using the tanning services at Crunch Mandeville upon joining and used the tanning services frequently, often weekly.

65.     In approximately mid-July of 2026, Plaintiff Casie Christopher became aware of

the incident from social media postings.

66.     Plaintiff Casie Christopher trusted that Crunch Mandeville would use reasonable measures to protect her privacy and to provide secure and safe facilities consistent with state and federal law.

67.     Although Plaintiff Casie Christopher took steps to learn from police authorities that images of her were not found on Volz's personal device, she remains concerned that Crunch did not take reasonable and adequate steps to protect her privacy and that Crunch does not have policies and procedures in place to prevent an incident such as Volz's video voyeurism from occurring in the future.

68.     Plaintiff Darla Johnson has been an active member at Crunch Mandeville since approximately January 2026.

69.     Plaintiff Darla Johnson began using the tanning services at Crunch Mandeville as soon as she became a member. She estimates that she has used the tanning services at Crunch Mandeville approximately five times.

70.     On approximately July 18, 2026, Plaintiff Darla Johnson became aware of the incident from news reporting and social media postings.

71.     Although Plaintiff Darla Johnson took steps to learn from police authorities that images of her were not found on Volz's personal device, she remains concerned that Crunch did not take reasonable and adequate steps to protect her privacy and that Crunch does not have policies and procedures in place to prevent an incident such as Volz's video voyeurism from occurring in the future.

72.     Defendant has not represented any business practices changes that have been implemented to prevent against future invasions of privacy of its customers and to provide secure

9

and safe facilities consistent with state and federal law.

## CLASS ACTION ALLEGATIONS

73.    At all times material hereto, Plaintiffs and the putative class members they seek to represent were members of Crunch who frequented and used the Crunch Mandeville facility.  This action is brought by Plaintiffs on their own behalf, and on behalf of all others similarly situated, under the provisions of Rule 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendants for violations of Louisiana state laws

> All current and former members of Crunch Mandeville who, during the Class Period, used or were entitled to use the facility.

74.    The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiffs are informed and believe that the proposed Class contains hundreds of individuals who are members of Crunch Mandeville. The precise number of Class members is unknown to Plaintiffs at this time but the number and identity of Class members can be easily ascertained through Defendants' business records.

75.    Plaintiffs and Class Members recognize that Volz's acts of video voyeurism could have been prevented if Crunch had instituted a policy to prevent employees from accessing their personal devices during the work shift. Plaintiffs and Class Members recognize that the only way to ensure that such video voyeurism does not happen again is to enjoin Crunch from engaging in the wrongful and unlawful acts described herein.

76.    **Commonality:** Common questions of law and fact exist as to all Class Members. These common questions of law or fact predominate over any questions affecting only individual members of the Class. There are common questions of law and fact concerning the policies and

10

procedures of Crunch that relate to and affect the rights of each member of the class and the relief sought is common to the entire class.

77.     Common sources of evidence may also be used to demonstrate Crunch's unlawful conduct on a class-wide basis.

78.     **Typicality:** The claims of the Plaintiffs are typical of the claims of the class, in that the claims of all members of the class, including the named Plaintiffs, depend upon a virtually identical showing of the acts and omissions of Crunch, giving rise to the right of Plaintiffs to the relief sought herein. Crunch was at all times material hereto engaged in the same conduct to the detriment of the entire class. The claims of Plaintiffs are typical of the claims of the class because they arise from the same course of conduct engaged in by Defendants, are based on the same alleged violations of the same statutes and regulations, and seek the same relief. Plaintiffs have no interests adverse to the interests of the other members of the Class.

79.     **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class and have retained attorneys well-experienced in class actions and complex litigation as their counsel, including cases alleging sexual offenses and invasion of privacy claims.

80.     **Superiority and Manageability:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

81.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

82.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly protect the privacy and rights of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding Volz's video voyeurism, and Defendant may continue to act unlawfully as set forth in this Complaint.

83.    Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

84.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## CLAIMS FOR RELIEF

## COUNT I – DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

85.    Plaintiffs reallege paragraphs 1 through 84 above as if fully set forth herein.

86.    At all times material hereto, Crunch acted negligently and its negligence permitted Volz to perform the aforementioned acts, through Crunch's failure to:

   a) Adequately vet and investigate Volz before hiring him;

   b) Adequately train Volz;

   c) Adequately supervise Volz;

   d) Adequately inspect Crunch's facilities and screen for cameras and other electronic devices which may be mounted to walls and/or fixtures and used to

12

surreptitiously capture images of members without their prior knowledge and consent;

e) Promulgate and enforce adequate policies and procedures to prevent video voyeurism in its facilities; and

f) Provide adequate security in its facilities.

87. The rights of Plaintiffs and Class Members are at risk of continued violation unless Crunch is enjoined from its current practices as outlined above.

88. Plaintiffs and Class Members are faced with continued invasion of their privacy because Crunch allows its employees to use and access their personal devices, including cellphones with photographic and video capabilities, during their work shifts.

89. Article I, Section 5 of the Louisiana Constitution provides that "Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy."

90. The constitutional right to privacy also applies where there is a reasonable expectation of privacy, including the private areas of the Crunch Mandeville facility.

91. Defendant's ongoing and continuing violations of Article I, Section 5 of the Louisiana Constitution have caused, and in the absence of an injunction will continue to cause, harm to the plaintiffs and the class.

92. Plaintiffs are entitled to declaratory and injunctive relief, in the form of a judgment declaring that Crunch's current policies are inadequate to protect the privacy of its members and to prevent video voyeurism.

93. Plaintiffs are entitled to declaratory and injunctive relief, in the form of a judgment declaring that Crunch's current policies are inadequate to train and supervise employees with direct

access to Crunch members utilizing private areas of the Crunch facility, including the tanning facilities.

94.     Plaintiffs are entitled to declaratory and injunctive relief, in the form of a judgment declaring that Crunch's current policies are inadequate to provide reasonably safe conditions for the Plaintiffs and all Crunch members during their use of the Crunch Mandeville facility (reasonably safe conditions include, but are not limited to, preventing an atmosphere wherein employees could target and/or sexually assault Crunch members

95.     Plaintiffs are entitled to declaratory and injunctive relief, in the form of a judgment requiring Crunch to promulgate and enforce policies that will ensure reasonably safe conditions for the Plaintiffs and all Crunch members during their use of the Crunch Mandeville facility including, but not limited to:

   a) policies and/or procedures designed to prevent employees from being able to bring personal devices and cameras into private areas of the Crunch facility, including the tanning facilities;

   b) policies and procedures to interview, assess, conduct background checks, obtain peer reviews, investigate, confirm recommendations, and conduct other enhanced vetting of employees with direct access to Crunch members utilizing private areas of the Crunch facility, including the tanning facilities; and

   c) policies and procedures to train and supervise employees with direct access to Crunch members utilizing private areas of the Crunch facility, including the tanning facilities.

### COUNT II – BREACH OF EXPRESS CONTRACT

14

96. Plaintiffs reallege paragraphs 1 through 95 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

97. At all times material hereto, Plaintiffs and Class Members entered into membership agreements with Crunch, supported by valid consideration, in exchange for access to and use of Crunch Mandeville's facilities, including the tanning facilities.

98. The membership agreements between Crunch and Plaintiffs and Class Members contain a provision set forth at [Membership Agreement § I], addressing photographs and/or video taken of members at the club, under which members' consent to appear in, or be captured in, photographs and/or video taken at the club is limited to "legitimate purposes" (the "Legitimate Purposes Provision").

99. Volz's covert recording of Plaintiffs and Class Members while undressed and/or engaged in private activities inside the tanning facilities at Crunch Mandeville, for his own personal use and/or for distribution, was not undertaken for any "legitimate purpose" within the meaning of the membership agreements. To the contrary, it constituted video voyeurism and a sexual offense, entirely outside the scope of the limited consent Plaintiffs and Class Members gave under the Legitimate Purposes Provision.

100. Crunch, through its personnel and/or agents, and/or through the conduct of Volz, failed to ensure that any such photographs and/or video were limited to legitimate purposes.

101. As a direct and proximate result of Crunch's breach of the Legitimate Purposes Provision, Plaintiffs and Class Members suffered damages and did not receive the benefit of the bargain for which they contracted, including the contractual assurance that any photographs and/or video taken at Crunch Mandeville would be limited to legitimate purposes and not used, retained, accessed, or exposed for illegitimate, unlawful, or injurious purposes. Plaintiffs and Class

Members were thereby deprived of the privacy protection for which they paid membership dues and fees, and sustained damages including, but not limited to, amounts paid for membership dues and fees, and other damages according to proof at trial.

**COUNT III – IN THE ALTERNATIVE, UNJUST ENRICHMENT**

102. Plaintiffs reallege paragraphs 1 through 101 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

103. Crunch Mandeville was enriched by Plaintiffs' and Class Members' payment of membership dues, fees, and other charges for access to Crunch's facilities and services, including the use of private tanning areas and the assurance that such facilities would not be used as a setting for covert voyeurism, unauthorized surveillance, or other unlawful invasion of privacy.

104. Plaintiffs and Class Members were impoverished by paying monies to Crunch Mandeville for membership access and the privacy, security, and protection that they did not receive. Plaintiffs and Class Members did not merely pay for the absence of actual recording; they paid for a secure and protected environment in which Crunch Mandeville would take reasonable measures to prevent, detect, and stop voyeuristic conduct and would not permit an atmosphere in which such conduct could occur.

105. There is a direct causal connection between Crunch Mandeville's enrichment and Plaintiffs' and Class Members' impoverishment, because Crunch obtained and retained the benefit of membership payments while failing to provide the security, safeguards, prevention measures, privacy, and protective environment that were part of the bargain and reasonably expected by its members.

106. Crunch Mandeville's enrichment was without cause or legal justification. Plaintiffs and Class Members did not consent to a deficient security environment, a failure to implement

16

reasonable protections, or the existence of a facility setting in which voyeurism could be conducted. Their payments were made in exchange for membership access under conditions of reasonable privacy and security, not for exposure to a known, enabled, or tolerated risk of voyeuristic conduct.

107.    Crunch Mandeville has retained the benefits of its conduct including the amounts received for security, safeguards, prevention measures, and protective environment practices that it did not provide. Due to Crunch Mandeville's conduct alleged herein, it would be unjust and inequitable under the circumstances for Crunch Mandeville to be permitted to retain the benefit of its wrongful conduct.

108.    Plaintiffs and Class Members are entitled to full refunds, restitution and/or damages from Crunch and/or an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Crunch from its wrongful conduct. If necessary, the establishment of a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation may be created.

109.    Additionally, Plaintiffs and Class Members may not have an adequate remedy at law against Crunch, and accordingly plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

<b><u>PRAYER FOR RELIEF</u></b>

**WHEREFORE**, Plaintiffs on their own and behalf of all others similarly situated, pray for relief as follows:

a)  For an Order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), appointing Plaintiffs as Class Representatives, and the undersigned as Class Counsel;

17

b) Awarding monetary, actual, and punitive damages and/or restitution, as appropriate, or nominal damages in the alternative;

c) Awarding declaratory and injunctive relief as permitted by law or equity to assure that the Class has an effective remedy, including enjoining Crunch from continuing the unlawful practices as set forth above;

d) Awarding pre- and post-judgment interest to the extent allowed by the law;

e) Awarding all costs, experts' fees and attorneys' fees, expenses and costs of prosecuting this action; and

f) Such other and further relief as the Court may deem just and proper.

## **REQUEST FOR JURY TRIAL**

Plaintiffs on their own and behalf of all others similarly situated, pray for trial by jury.

Dated: August 4, 2026                    Respectfully submitted,

Reagan C. Thomas
La. Bar No. 38522
**AYLSTOCK WITKIN KREIS
& OVERHOLTZ PLC**
17 E. Main Street, Suite 200
Pensacola, Florida 32502
Tel: (850) 202-1010
rthomas@awkolaw.com

Jean S. Martin*
NC Bar No. 25703
**AYLSTOCK WITKIN KREIS
& OVERHOLTZ PLC**
17 E. Main Street, Suite 200
Pensacola, Florida 32502
Tel: (850) 202-1010
jmartin@awkolaw.com

18

Hillary Nappi*
NY Bar No. 5204045
**AYLSTOCK WITKIN
KREIS & OVERHOLTZ PLC**
17 E. Main Street, Suite 200
Pensacola, Florida 32502
Tel: (850) 202-1010
hnappi@awk-saa.com

*Attorneys for Plaintiffs and the Proposed
Class*

***\*pro hac vice admission to be submitted***